# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DONALD MAURICE TODD,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | **REPORT AND RECOMMENDATION**<br><br>Case No. 1:12-cv-00234-CW-EJF<br>District Court Judge Clark Waddoups<br>Magistrate Judge Evelyn J. Furse |

Plaintiff Donald Maurice Todd asks the Court to reverse and remand the Social Security Administration's final agency decision denying his Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Administrative Law Judge ("ALJ") determined that Mr. Todd did not meet the eligibility standards for benefits because he "does not have an impairment or combination of impairments that has significantly limited…the ability to perform basic work-related activities for 12 consecutive months." (ECF No. 8, the certified copy of the transcript of the entire record of the administrative proceedings relating to Mr. Todd (hereafter "Tr. __") 21.) Having carefully considered the parties' memoranda and the complete record in this matter, the undersigned Magistrate Judge RECOMMENDS that the Court AFFIRM the Commissioner's decision that Mr. Todd does not qualify for Disability Insurance Benefits or Supplemental Security Income.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Todd was born on March 29, 1978. (Tr. 141.) Mr. Todd alleges he suffers from migraines and depression. (Tr. 147.) He alleges onset of his disability beginning August 20, 2008, and his date last insured is March 31, 2013. (Tr. 17, 141-142.) On June 16, 2009, Mr.

1

Todd protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, which the Commission denied initially on January 12, 2010 and again upon reconsideration April 8, 2010. (Tr. 17.) Mr. Todd then filed a written request for a hearing before an ALJ on May 18, 2010 which the commission granted. (Tr. 17.) The ALJ held a video hearing June 3, 2011, for which claimant appeared in Salt Lake City, Utah. (Tr. 17.)

There, Mr. Todd testified that he began to suffer from headaches starting at age nine, indicating that migraines have afflicted both of his parents as well. (Tr. 34.) Mr. Todd explained that his headaches have gotten progressively worse with age, impacting his ability to understand and concentrate on what he is doing. (Tr. 35.) He testified that his headaches make him aggressive with others because he is "not good at being able to talk to people when [his] headache comes" and "just think[s] of hurting and wanting to hurt people" at those times. (Tr. 35.) Mr. Todd explained that a few aspirin used to suffice to stop his headaches, but that remedy has ceased to have an effect. (Tr. 37.) He described having migraine pain in his head, neck, and shoulders and explained that in the event of a migraine, he has to lay down in the dark to avoid vomiting. (Tr. 38-39.) Mr. Todd testified that he has had low energy and has experienced significant weight loss. (Tr. 40-41.) He explained he only has about ten percent of the energy he use to have and lacks energy to engage in sports, such as golfing. (Tr. 41-42.) Mr. Todd also testified that he does take care of his infant son during the day but requires help from his mother-in-law and sisters-in-law with changing diapers and providing food. (Tr. 43-45.) He also described his experience in school trying to acquire skills to fix computers and his related attendance at vocational rehabilitation, which his teacher recommended to enable him to attend therapy at the program's expense. (Tr. 46-47.) Mr. Todd's attorney questioned Mr. Todd about

his ability to focus based on his attendance at computer school, to which Mr. Todd explained he has not done anything with computers since 2008. (Tr. 49.) The Claimant reiterated his difficulty hearing criticism from others, and his challenges with meeting goals at work. (Tr. 50-51.) Mr. Todd explained his inability to engage in normal activities with his wife and child, such as going for a walk, and the arguments he has had with his wife over his refusal to participate. (Tr. 53-54.) Finally, he testified that he has participated in therapy for most of his adult life for his depression and anger problems. (Tr. 56-57.)

At the hearing, the ALJ considered medical evidence from multiple physicians who evaluated Mr. Todd, including the report that he first sought treatment for his headaches in July 2007 from Davis Family Physicians. (Tr. 218-229.) On July 31, 2007 at Davis Family Physicians, Mr. Todd reported throbbing, pulsating, sharp headaches, swollen sinuses, and the feeling that his head was exploding on and off for the past three weeks. (Tr. 223.) His patient chart notes: "he doesn't ever have headaches in the past." (*Id*.) The examination resulted in a recommendation to take an over-the-counter analgesic such as Tylenol or Ibuprofen. (Tr. 224.) An MRI showed Mr. Todd's brain was normal. (Tr. 231.)

In contrast to what he told his doctor in 2007, in December 2008, Mr. Todd saw Dr. Jesse Spencer and complained of headaches that had started in childhood and worsened with age. (Tr. 244.) Dr. Spencer prescribed amitriptyline and said that if Mr. Todd's headaches continued for six weeks, he would reassess his medication. (Tr. 245.) In February 2009, Dr. Spencer again treated Mr. Todd for his headaches. (Tr. 242.) At that time, Mr. Todd reported minor depression resulting from the headaches but did not want pharmacologic help because it would "change him." (*Id*.) Dr. Spencer changed Mr. Todd's medication to metoprolol and sumatriptan to see if they would help the migraines. (Tr. 243.) In June 2009 Mr. Todd again complained of

headaches to Dr. Spencer but thought the sumatriptan helped. (Tr. 240.) Dr. Spencer thought Mr. Todd's symptoms seemed like depression and prescribed citalopram for it. (Tr. 240-41.) Mr. Todd denied having ever been treated for depression at that time. (Tr. 240.) When Mr. Todd saw Dr. Spencer again in August 2009, the doctor prescribed physical therapy, advised Mr. Todd to cease taking citalopram medication that made him feel more aggressive, and sent Mr. Todd for a cervical spine x-ray, which returned normal. (Tr. 238-239, 249.) Mr. Todd admitted he had not taken the metoprolol Dr. Spencer had prescribed as a headache prophylaxis. (Tr. 238.)

In September 2009, C.D. Swaner, Ed.D., conducted a consultative psychological examination of Mr. Todd. (Tr. 251-259.) From this examination, Dr. Swaner recommended that Mr. Todd receive psychiatric treatment or "he will probably be a candidate for SSI." (Tr. 252.) Dr. Swaner also noted that Mr. Todd had failed to comply with psychiatric medication and treatment in the past. (Tr. 252.) Dr. Swaner diagnosed Mr. Todd with Reactive Attachment Disorder, Psychological Problems Effecting Physical Illness, and depressive disorder. (Tr. 254-256.) Based upon Dr. Swaner's assessment, Mr. Todd became eligible for services from Vocational Rehabilitation on September 23, 2009. (Tr. 260.)

From December 2009 to November 2010, Mr. Todd attended mental health counseling sessions with Dr. Peter O'Neil, Ph.D. (Tr. 314-331.) During this time, Mr. Todd reported that he had no energy and did not even want to play video games. (Tr. 328, 324.) However, Mr. Todd also reported boredom taking care of his infant son and hoped his father would buy him a new video game station. (Tr. 324.)

State agency physicians also reviewed Mr. Todd's medical records. In November 2009, Dr. Dennis Taggart, M.D., reviewed Mr. Todd's medical records and determined he could

4

perform light work. (Tr. 284-291.) In January 2010, psychologist Dr. Nancy Cohn reviewed Mr. Todd's medical records for purposes of conducting a psychiatric review and determined he had mild restrictions in his activities of daily living, moderate difficulties in maintaining social functions, mild difficulties in maintaining concentration, and no episodes of decompensation. (Tr. 302.)

On June 8, 2011, the ALJ concluded Mr. Todd had not been under a disability within the meaning of the Social Security Act from August 20, 2008 through the date of the decision because he did not have a severe impairment or combination of impairments as defined under 20 CFR §§ 404.1520-1521. (Tr. 20-26.)

## STANDARD OF REVIEW

42 U.S.C. section 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but

5

mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotations marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of the evidence," *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically, but will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson*

6

*v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## **LEGAL STANDARDS**

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. *See* 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750–53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

7

## ANALYSIS

In this case, the ALJ applied the five-step sequential disability evaluation and made the following findings of fact and conclusions of law with respect to Mr. Todd:

1. "[Mr. Todd] meets the insured status requirements of the Social Security Act through March 31, 2013." (Tr. 19.)
2. "[Mr. Todd] has not engaged in substantial gainful activity since August 20, 2008, the alleged onset date…." (Tr. 19.)
3. "[Mr. Todd] has the following medically determinable impairments: (1) A mental impairment or impairments variously diagnosed as major depressive disorder, rule-out personality disorder, rule-out malingering, and reaction attachment disorder…." (Tr. 19.)
4. "[Mr. Todd] does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments…." (Tr. 20.)
5. "[Mr. Todd] has not been under a disability, as defined in the Social Security Act, from August 20, 2008, through the date of this decision…." (Tr. 25.)

In short, the ALJ found that Mr. Todd does not qualify as disabled under sections 216(i), 223(d) or 1614(a)(3)(A) of the Social Security Act. (Tr. 26.) Because he found Mr. Todd not impaired, the ALJ found Mr. Todd did not qualify for SSI or DIB.

In support of his claim that this Court should reverse the Commissioner's decision, Mr. Todd argues that: (1) substantial evidence does not support the ALJ's findings because he failed to give proper weight to the medical evidence; and (2) the ALJ erred in finding no severe impairment at step two. (Pl.'s Opening Brief 1, ECF No. 15.) The undersigned Magistrate Judge addresses both arguments in turn, and recommends the District Court affirm the Commissioner's decision.

### I. Evaluation of Treating Physician Opinion Evidence

First, Mr. Todd argues substantial evidence does not support the ALJ's findings because the ALJ failed to give proper weight to the medical evidence. Mr. Todd bases this allegation on

the ALJ's assignment of "no weight" to many of the medical opinions. (Pl.'s Opening Brief 16-20, ECF No. 15.) In particular, Mr. Todd claims that the ALJ erred in failing to analyze whether treating physician Dr. Spencer's opinion merited controlling weight, and in ultimately giving it no weight. This assessment misunderstands the ALJ's obligation to consider and evaluate the medical evidence before him. The undersigned Magistrate Judge disagrees with Mr. Todd's claim that the ALJ did not follow the correct legal standards in evaluating the weight of the doctors' opinions.

An ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(c). An ALJ may give a treating physician's opinion controlling weight if the ALJ finds it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). When the ALJ does not give a treating physician's opinion controlling weight, he must consider certain factors. 20 C.F.R. section 404.1527(c) provides these factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003) (citation omitted). To reject a medical opinion, the ALJ must provide "specific, legitimate reasons" for doing so. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)).

Yet the ALJ's decision need not *discuss explicitly* all of the factors for each of the medical opinions. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that a

9

lack of discussion of each factor does not prevent the court from according the decision meaningful review). Further, when considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971)(reflecting it is the ALJ's duty to resolve conflicting medical evidence).

      In his decision, the ALJ gave the opinion evidence of Dr. O'Neil, Dr. C.D. Swanger, Dr. Spencer, Dr. Taggart, and Dr. Cohn "no weight." (Tr. 24-25.) For each of these medical opinions, though, the ALJ thoroughly explained his reasons for assigning that weight. Throughout his explanations, the ALJ's reasoning as to the weight to accord the various medical opinions depended largely on Mr. Todd's inconsistent and contradictory accounts of his headaches, conditions, encounters, and experiences when speaking with doctors. (Tr. 21-25.) In evaluating Mr. Todd's credibility and in his evaluation of the other doctors' opinions, the ALJ specifically considered Dr. John Hardy's reports of insincere effort and possible malingering. (Tr. 22.) *See Diaz v. Sec'y of Health & Human Servs.*, 898 F. 2d 774, 777 (10th Cir. 1990) (upholding an ALJ's credibility finding where, among other factors, an examining doctor suspected the claimant of malingering; also noting that credibility determinations remain the province of the Commissioner, which the courts should not disturb when supported by substantial evidence). In Dr. Hardy's findings, which the ALJ had before him (Tr. 264-268) at the hearing, Dr. Hardy stated that he did not believe Mr. Todd had given full effort to the tests administered and dramatized his experiences, and therefore he could not make an accurate examination. (Tr. 268.) Dr. Hardy's reports of malingering and false efforts informed the ALJ's review of all medical opinion evidence, especially given the heavy reliance of the practitioners on Mr. Todd's self-reports of his impairments.

Regarding Dr. O'Neil, the ALJ noted that the doctor treated Mr. Todd for approximately a year but found his treatment was "nothing more than supportive, uncritical listening" in which he never seemed to "challenge the claimant's view of himself or his limitations, nor confront him about apparent contradictions." (Tr. 24.) The ALJ remarked that Dr. O'Neil seemingly did not perform mental status exams nor verify Mr. Todd's claims with other medical professionals. (*Id.*) In addition, Dr. O'Neil had never referred Mr. Todd for psychiatric treatment even though the doctor's endorsement of his extreme limitations suggested such a referral would seem prudent. (*Id.*) Finally, the ALJ explained that Dr. O'Neil had not explained nor reasoned his opinion persuasively, and drew an opinion inconsistent with the record as a whole, leading the ALJ to assign the doctor's opinion "no weight." (*Id.*)

Next the ALJ discussed Dr. C.D. Swanger's examination and opinion of Mr. Todd. Dr Swanger based his opinion upon a one-time examination. The ALJ found the doctor's opinion vague, failing to offer function-by-function limitations, and instead seemed "more in the nature of a general opinion that the claimant is unable to perform sustained work activity-i.e. is disabled," a determination properly reserved for the Commissioner. (Tr. 24.) 20 C.F.R. § 404.1527(d)(1)-(3) (stating treating source opinions on issues reserved to the Commissioner never entitled to any special significance); *Castellano v. Sec'y of Health & Human Servs.*, 26 F. 3d 1027, 1029 (10th Cir. 1994)(a treating physician's opinion on an issue—such as disability status—reserved to the Commissioner is not binding on the Commissioner in making his ultimate determination of disability). Further, because Dr. Swanger's opinion was inconsistent with the record as a whole, the ALJ gave it "no weight." (Tr. 24.)

The ALJ gave no weight to the opinion of Mr. Todd's treating physician, Dr. Jesse Spencer, for a number of reasons. (Tr. 24.) The ALJ noted Dr. Spencer, as a primary care

11

physician, M.D., did not have the expertise from which to opine that Mr. Todd could not work because of his labile mood and that the record itself did not support Mr. Todd's allegations of labile mood. (*Id.*) Moreover, the ALJ reiterated that to the extent Dr. Spencer based his opinion upon Mr. Todd's claim of "frequent headaches," there was no medically determinable basis to show such an impairment existed. (*Id.*) Next, the ALJ explained that when Dr. Spencer opined that Mr. Todd cannot work, he effectively determined that Mr. Todd qualified as disabled, a medical-vocational determination which, as mentioned above, belongs to the Commissioner. (*Id.*) Further, the ALJ noted Dr. Spencer's overall opinion does not comport with the record as a whole. (*Id.*)

Finally, the ALJ discussed the weight due to the State agency physicians. Dr. Dennis Taggart reviewed Mr. Todd's file and opined he could perform light work. Psychologist Dr. Nancy Cohn "reviewed the file and opined Mr. Todd may have difficulty getting along with others." (Tr. 24-25.) The ALJ noted that neither State doctor examined Mr. Todd. (Tr. 25.) Moreover, Dr. Taggart gave "virtually no explanation of his opinion, which greatly diminishe[d] its credibility." (*Id.*) Similarly, Dr. Cohn gave a "vague and not well reasoned" opinion, and while she recited the evidence at length, "she d[id] not appear to analyze it in any detail." (*Id.*) Because Mr. Todd's consultative exam and other admissions revealed that he exaggerated his reports of social difficulties, and because the State agency physicians based their opinions largely on those reports, the ALJ gave the opinions of Drs. Taggart and Cohn no weight. (*Id.*)

Though the ALJ did not explicitly discuss the 20 C.F.R. § 404.1527(c) factors, *Oldham v. Astrue* makes clear that the ALJ need not explicitly discuss each factor. As the discussion above reflects, the ALJ did provide specific, legitimate reasons for giving "no weight" to the medical opinions before him, and clearly did consider the 404.1527(c) factors. The undersigned

12

Magistrate Judge thus recommends the Court deny Mr. Todd's request to overturn the ALJ's decision for failure to give proper weight to the medical evidence.

## II. Step Two Finding of Non-Severe Impairment

Second, Mr. Todd argues the ALJ erred in finding no severe impairment at step two. Mr. Todd bases this claim on the language from the Supreme Court's *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987), noting that a claimant need only make a "de minimus" showing to meet his burden at step two. (Pl.'s Opening Br. 11-12, ECF No. 15.) Mr. Todd's reading of that language over-simplifies the extent of his burden.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments which significantly limits his ability to do basic work activities. 20 C.F.R. § 404.1520(c); *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004). The ALJ must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. To prove that he has a severe, medically determinable impairment at step two, a claimant must establish both that the condition constitutes a medically determinable impairment and that the impairment significantly limits his ability to do basic work activity. 20 C.F.R. §§ 404.1520(c), 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.")[1] The medical evidence must demonstrate that a physical or mental impairment lasts

---

[1] "Basic work activities are 'abilities and aptitudes necessary to do most jobs,' 20 C.F.R. § 404.1521(b), including 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.' Social Security Ruling 85–28, 1985 WL 56856 at *3." *Langley*, 373 F.3d at 1123.

13

for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1508-1509; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). If the claimant does not have a severe medically determinable impairment or combination of impairments, the claimant does not qualify as disabled. *Langley*, 373 F.3d at 1123. *See also Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

Mr. Todd alleges the ALJ should have found his headaches constituted a medically determinable impairment and that that impairment in combination with his mental impairments significantly limits his ability to do basic work activity. (Pl.'s Opening Br. 12, ECF No. 15.)

### A. The ALJ's Evaluation of Mr. Todd's Headaches

The ALJ found Mr. Todd's headaches did not qualify as medically determinable impairments because no objective medical evidence supported them. (Tr. 19-20.) In reaching his determination that Mr. Todd's headaches did not qualify as medically determinable, the ALJ explained "the objective medical evidence does not support the claimant's allegations," nor does it explain any diagnoses of migraine headaches, tension headaches, optical neuralgia, or cluster headaches. (Tr. 19.) First, an MRI of the Claimant's brain was normal. (Tr. 19, 236.) Second, a cervical spine x-ray also returned normal results. (Tr. 19, 249.) Third, the ALJ noted that although a clinician at the Intermountain Healthcare IDX Clinic Physician Group deemed Mr. Todd to have positive trigger points in his cervical spine musculature, those findings depended on Mr. Todd's *own* reports which, as the ALJ determined, lacked credibility. (Tr. 19-20, 269.) The ALJ explained that "[t]here must be evidence from an 'acceptable medical source' in order to establish the existence of a medically determinable impairment…that can reasonably be expected to produce the symptoms," but that here "there were no medical signs or laboratory

findings to substantiate the existence of such." (Tr. 20.) As a result, the ALJ found Mr. Todd's headaches did not qualify as a medically determinable impairment. (*Id.*)

The ALJ discredited Mr. Todd's subjective reports of his headaches based in large part upon Dr. Hardy's report of malingering, discussed above. Medical evidence consisting of signs, symptoms and laboratory findings must establish an impairment—a claimant's statement of his symptoms alone does not suffice. 20 C.F.R. § 404.1508; SSR 96-4p, 1996 WL 374187 (July 2, 1996) ("[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.") Because most of the evidence of Mr. Todd's allegedly disabling impairments come solely from his non-credible, subjective self-reports, no acceptable medical source establishing the existence of a medically determinable impairment existed. *See* 20 CFR § 404.1513(a). Substantial evidence therefore supports the ALJ's finding at step two that Mr. Todd's headaches did not qualify as a medically determinable impairment. Upon finding the headaches did not constitute a medically determinable impairment, the ALJ did not have to determine whether Mr. Todd's headaches alone impaired his ability to do basic work, and the ALJ appropriately ended his inquiry here regarding Mr. Todd's headaches. 20 C.F.R. § 404.1520.

**B. The ALJ's Evaluation of Mr. Todd's Mental Impairments**

After determining that Mr. Todd had not engaged in substantial gainful activity since his alleged onset date of August 20, 2008, the ALJ found Mr. Todd had "[a] mental impairment or impairments variously diagnosed as major depressive disorder, rule-out personality disorder, rule-out malingering, and reactive attachment disorder." (Tr. 19.) This finding that Mr. Todd's

15

depression did constitute a medically determinable impairment merited inquiry into whether the impairment significantly limits Mr. Todd's ability to do basic work activity.

Given Mr. Todd's medically determinable mental impairments, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders." (Tr. 25, citing 20 CFR, Part 404, Subpart P, Appendix A.) In considering the impact of the mental impairment, the ALJ also considered Mr. Todd's reported headaches. (Tr. 20-23.) In the first functional area, activities of daily living, the ALJ deemed Mr. Todd's self-reports of impaired activities of daily living non-credible based on Mr. Todd's apparent ability to care for his infant son and play video games. (Tr. 25.) The ALJ determined Mr. Todd had no limitation in this area of functioning. (*Id*.) In the second functional area, social functioning, the ALJ considered Mr. Todd's self-descriptions non-credible, and so found Mr. Todd has only mild limitation in this area. (*Id*.) In the third functional area, concentration, persistence, or pace, the ALJ again found Mr. Todd's descriptions non-credible because he was able to complete the Wechsler Adult Intelligence Scale, care for his son, and play video games. (*Id*.) Accordingly the ALJ found no more than a mild limitation in this area. (*Id*.) Finally, in the fourth functional area, episodes of decompensation, the ALJ noted Mr. Todd had experienced no episodes of decompensation for extended duration, nor been psychiatrically hospitalized. (*Id*.) Finding Mr. Todd's medically determinable mental impairments "cause[d] no more than 'mild' limitation in any of the first three functional areas and [led to] 'no' episodes of decompensation," the ALJ deemed Mr. Todd's impairments nonsevere. (*Id*.) Substantial evidence in the record supports the ALJ's findings on these points.

As the 10th Circuit has explained, "[i]f it is determined that a claimant is or is not disabled at any point in the analysis, the review stops." *Casias v. Sec'y of Health & Human*

16

*Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Because the ALJ found Mr. Todd's medically determinable mental impairments did not significantly limit Mr. Todd's ability to perform basic work-related activities for 12 consecutive months and he thus did not have a severe impairment or combination of impairments within the parameters of 20 CFR §§ 404.1521 or 415.921, the ALJ applied the correct legal analysis in determining Mr. Todd was not disabled within meaning of the Social Security Act. (Tr. 20-25.) Upon finding his impairments did not limit Mr. Todd's ability to do basic work activity, the ALJ appropriately ended his inquiry by finding Mr. Todd not disabled within the meaning of the statute. 20 C.F.R. § 404.1520.

## **RECOMMENDATION**

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS the Court find that substantial evidence supports the Commissioner's decision and that the Commissioner applied the correct legal standards and AFFIRM the Commissioner's decision in this case.

The Court will send copies of this Report and Recommendation to the parties, and notifies them of their right to object to the same. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). The Court further notifies the parties they must file any objection to this Report and Recommendation with the clerk of the court within fourteen (14) days after being served with a copy thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 13th day of February, 2014.

                        BY THE COURT:

                        Evelyn J. Furse
                        United States Magistrate Judge